UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BIO-MEDICAL APPLICATIONS OF TENNESSEE, INC.; BIO-MEDICAL APPLICATIONS OF KENTUCKY, INC.; BIO-MEDICAL APPLICATIONS OF GEORGIA, INC.; BIO-MEDICAL APPLICATIONS OF INDIANA, INC; and NATIONAL MEDICAL CARE, INC. | |
| Plaintiffs, | Case No. 3:04-1016 |
| | Judge Trauger |
| v. | |
| CIGNA HEALTHCARE OF TENNESSEE, INC. | |
| Defendant. | |

## MEMORANDUM

The defendant has filed a Motion to Exclude Certain of Plaintiffs' Claims (Docket No. 33), to which the plaintiff has responded (Docket No. 36), the defendant has replied (Docket No. 38) and the plaintiff has surreplied (Docket No. 47), to which the defendant has filed a supplemental reply (Docket No. 49). For the reasons discussed herein, the defendant's Motion to Exclude will be denied.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The plaintiffs, outpatient dialysis clinics, allege that the defendant, CIGNA, has failed to pay for dialysis services provided by the plaintiffs to the defendant's insureds.[1] The parties had a

---

[1]Unless otherwise noted, the facts have been drawn from the plaintiffs' Complaint (Docket No. 1), the plaintiffs' Response to Defendant's Motion to Exclude (Docket No. 36), and the plaintiffs' Surreply (Docket No. 47).

1

discovery dispute pursuant to which the defendant presently seeks to exclude certain of the plaintiffs' claims at trial.

The issue pertains to how far back in time the plaintiffs' claims may reach. Although the Complaint does not give a particular date for CIGNA's first failures to pay for the dialysis services, it does state that, "By August of 2001, CIGNA had a significant payable to Plaintiffs for services provided to CIGNA's plan participants." (Docket No. 1 at p. 3) In addition, the plaintiffs allege that counsel for both parties discussed the existence of insurance reimbursement claims arising before 2002 on multiple occasions. (Docket No. 37) Specifically, the plaintiffs allege that the full range of claims were discussed at the initial case management conference. (*Id*.) The defendant does not dispute that assertion.

However, in response to discovery requests, the plaintiffs served upon the defendant first an Excel spreadsheet, and later an electronic document, listing claims going back only to 2002. The defendant performed an analysis on each of those claims to determine whether it had underpaid or overpaid them. On December 5, 2005, the defendant forwarded its analysis to the plaintiffs by e-mail, requesting that the plaintiffs respond to the analysis, in order to facilitate out-of-court settlement. On December 12, 2005, counsel for the defendant sent an e-mail to the plaintiffs requesting that the plaintiffs "find out about the pre-2002 outstanding claims issue." (Docket No. 34, Ex. 4) On March 21, 2006, the plaintiffs responded, mistakenly sending the same electronic files that they had already sent, listing claims going back to 2002. CIGNA did not give the plaintiffs notice of the problem until May 22, 2006 and, on May 25, 2006, the plaintiffs forwarded a different set of files to CIGNA. (Docket No. 34 at p. 6)

The new set of files contained a new set of claims ranging from January 1, 2000 through

2

November 30, 2005. (*Id.*) In response, CIGNA inquired as to whether the plaintiffs intended to pursue all of the attached claims, and the plaintiffs affirmed that they did. After requesting that the plaintiffs reconsider this decision, the defendant filed the present motion in this court, seeking to exclude all the new claims. Since that time, the defendant has agreed that the plaintiffs may include claims that accrued after March 31, 2004 and requests only that the court exclude those claims that accrued prior to 2002. (Docket No. 49 at p. 4)

## ANALYSIS

**I.   Rule 37(b)**

Rule 37(b)(2) of the Federal Rules of Civil Procedure provides that, "if a party . . . fails to obey an order to provide or permit discovery . . . or if a party fails to obey an order entered under Rule 26(f)," the court may award sanctions, including: "(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(B). The defendant asserts that, because the plaintiffs served discovery that did not cover the full range of claims the plaintiffs seek to assert at trial, the plaintiffs should be barred from supporting those claims that were not originally included, notwithstanding that the plaintiffs corrected the error without direction from the court. The result of that sanction would be, in effect, to preclude the plaintiffs from bringing those claims in federal court. The court finds that sanction to be unduly harsh and will not award it.

The defendant has taken pains to establish that it is not moving to dismiss the claims at issue under Rule 37(b)(2)(C), but to exclude the plaintiffs from supporting those claims at trial, pursuant to Rule 37(b)(2)(B). There may be a meaningful difference between the two sanctions

3

in many situations, which is presumably why they are identified in two different subsections of Rule 37(b). However, in the case at hand, were the plaintiffs to assert the pre-2002 claims at a later date, those claims would likely be barred on statute of limitations grounds. (Docket No. 47 at p. 2) The net effect of granting the defendant's request for relief under Rule 37(b)(2)(B) would be to bar the plaintiffs from ever bringing their pre-2002 claims in federal court.

The defendant has identified no Sixth Circuit caselaw—and this court has found none—distinguishing between Rule 37(b)(2)(B) and Rule 37(b)(2)(C) in determining whether, generally, Rule 37(b)(2) should apply to bar a plaintiff from bringing claims in federal court. In fact, each of the three cases the defendant has cited in support of its preferred sanction involved dismissal under Rule 37(b)(2)(C) or some earlier iteration of that rule. *See Technology Recycling Corp. v. City of Taylor*, 186 Fed. Appx. 624 (6th Cir. 2006) (citing *Societe Internationale Pour Participations Industrielles Et Commerciales*, S.A. v. Rogers, 357 U.S. 197, 208 (1958) (involving the sanction of dismissal, in an early version of the Federal Rules, under Rule 37(b)(2)(iii)); *McIntyre v. Howell*, No. 3:04-0361, 2006 WL 1788454 at *2 (M.D. Tenn. June 23, 2006).

Where parties have moved to dismiss claims pursuant to Rule 37(b), the Sixth Circuit has identified four factors that should be considered: (1) whether the party's failure to cooperate in discovery was due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered. *See Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995); *Bank One of Cleveland v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990).

4

The defendant has not shown the level of bad faith, willfulness, or fault that is typically present in cases where claims have been barred from adjudication pursuant to Rule 37(b). *See, e.g., Bass*, 71 F.3d at 241 (first factor met where the plaintiff willfully refused to respond to discovery requests and to attend a noticed deposition); *Bank One of Cleveland*, 916 F.2d at 1073 (first factor met where the defendant refused to appear at scheduled depositions and refused to answer specific questions at subsequent depositions); *Technology Recycling Corp.*, 186 Fed. Appx. at 631-32 (first factor met where the plaintiff repeatedly refused to comply with court orders to provide opposing counsel with discovery). The plaintiffs have not disobeyed an order of the court or refused to comply with any discovery requests. Instead, the plaintiffs appear to have supplied an incomplete document and to have later updated that document. The plaintiffs' mistakes simply do not warrant precluding them from pursuing their pre-2002 claims in this action.

Further, Rule 37(b)(2) provides for relief only where a party "fails to obey an order to provide or permit discovery, including an order made under subdivision(a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f)," Fed. R. Civ. P. 37(b)(2). The defendant, in support of its motion, has not identified a specific order issued by this court under Rule 37, Rule 35, or Rule 26(f) that the plaintiffs have failed to obey. In fact, the defendant's present motion marks the first instance of this court's involvement in the present discovery dispute. Before the filing of that motion, the plaintiffs had already corrected their mistake and provided the full number of claims at issue in this action, without any direction from this court. The plaintiffs' delay in providing the defendant with a full list of each insurance claim at issue does not warrant the drastic relief requested by the plaintiffs under Rule 37.

5

## II.     Equitable Estoppel

Alternatively, the defendant seeks to bar the plaintiffs from presenting evidence in support of their pre-2002 claims for reimbursement pursuant to the doctrine of equitable estoppel.  In *Consumer Credit Union v. Hite,* 801 S.W.2d 822, 825 (Tenn. Ct. App.1990), the Tennessee Court of Appeals recited the requirements of a claim of equitable estoppel as follows:

> The essential elements of an equitable estoppel as related to the party estopped are said to be (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts. As related to the party claiming the estoppel they are (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) Reliance upon the conduct of the party estopped; and (3) Action based thereon of such a character as to change his position prejudicially.

*Id.* at 825 (citing *Callahan v. Town of Middleton,* 41 Tenn.App. 21, 292 S.W.2d 501 (1954)), as cited in *Star Trasnp., Inc. v. CSIR Enterprises, Inc.*, 409 F. Supp. 2d 939, 952 (M.D. Tenn. 2006). Estoppel is not favored, and it is the burden of the party seeking to invoke the doctrine to prove each and every element thereof. *Robinson v. Tennessee Farmers Mut. Insur. Co.,* 857 S.W.2d 559, 563 (Tenn .Ct. App.1993).  The court finds that the defendant has not met that burden and that the plaintiffs are not equitably estopped from supporting their pre-2002 claims at trial.

The defendant asserts that the plaintiffs' incomplete discovery responses was conduct "amount[ing] to a false representation or concealment of material facts, or . . . calculated to convey the impression that facts are otherwise." *Consumer Credit Union*, 801 S.W.2d at 825. However, although the responses did not include all of the reimbursement claims that the plaintiffs planned to raise at trial, the plaintiffs had made known the existence of pre-2002 claims

6

elsewhere, such as in the Complaint and at the initial case management conference. In light of the open communication between the parties regarding the pre-2002 claims, it cannot be said that the incomplete discovery responses themselves amounted to false representations, concealment of facts, or that they were calculated to convey a false impression. Nor does the court find that the plaintiffs intended that the incomplete discovery should cause the defendant to take any actions that it otherwise would not have taken. In a situation, such as this one, where the parties have openly discussed the existence of claims for which discovery has not yet been provided, it cannot be that the incomplete discovery, itself, is proof of a deceptive intention. Finally, the defendant's own knowledge of the pre-2002 claims is well evidenced by the December 12, 2005 e-mail, in which counsel for the defendant requested that the plaintiffs "find out about the pre-2002 outstanding claims issue." Accordingly, the plaintiffs are not equitably estopped from supporting these claims at trial.

## III.    Alternative Remedies

The defendant proposes the following alternative remedies: (1) for the plaintiffs to supply member ID numbers for the new claims data; (2) an additional 90 days to analyze the new claims prior to the inception of deposition discovery; (3) to exclude from recovery those pre-2002 claims that will be non-reimbursable due to customer accounts having been closed, and (4) an award of reasonable costs for the analysis on the original claims data that the defendant shared with the plaintiff.

The plaintiffs do not object to the defendant's first two proposed alternative remedies, and the court will grant them. The court will not grant either the third or the fourth proposed remedy. With regard to the third remedy, the defendants allege that they will be unable to obtain

7

reimbursement from certain customers for a significant number of pre-2002 claims, the customer accounts having been closed. That may well be the case; however, it does not follow that the plaintiffs should be barred from recovery for those claims. Of the non-reimbursable pre-2002 claims, the defendant does not differentiate between those that were closed before the plaintiffs made any discovery responses and those that were closed in the interim. Even assuming that the plaintiffs are somehow responsible for the extra cost incurred in the interim, when their discovery was incomplete, there could be no basis for the defendant to exclude recovery for claims that became non-reimbursable before any discovery requests were even served upon the plaintiffs. Moreover, for the reasons listed above, the defendants could not have reasonably believed that no pre-2002 claims would be pursued, even during that interim period, considering the information provided in the Complaint and the communications between the parties. The court can find no basis to exclude from recovery any of the pre-2002 claims, whether reimbursable or not.

     Nor would it be proper for the court to award the defendant its costs incurred in analyzing the original claims data that it shared with the plaintiffs. The defendant alleges that it would not have shared that data had it believed the plaintiffs were planning to assert extra reimbursement claims. However, as mentioned above, that contention is belied by the defendant's own communications to the plaintiffs, indicating an awareness of additional pre-2002 claims. It may be that the defendant would not have shared the data had it known how very many pre-2002 claims the plaintiffs would assert, but the record does not show that the plaintiffs misled the defendant regarding the number of pre-2002 claims. Moreover, the defendant admits that it would have performed the claims analysis in any event and demands costs only on the basis that

8

it would not have shared the data had it received complete discovery beforehand. The defendant has provided no legal theory, and this court knows none, under which the plaintiffs could recover discovery costs on that basis. The court will not award the defendant its costs incurred in performing the claims analysis.

## CONCLUSION

For the reasons stated herein, the defendant's Motion to Exclude Certain of Plaintiffs' Claims will be denied. However, the court will grant certain of the defendant's requested alternative relief. Specifically, the court will order the plaintiffs to supply identification numbers for the new claims data and provide the defendant with 90 days to analyze the claims prior to the taking of depositions, as requested.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

9